[No. D031096. Fourth Dist., Div. One. Dec. 6, 1999.]

VALLEY CASEWORK, INC., Plaintiff and Appellant, v.
COMFORT CONSTRUCTION, INC., et al., Defendants and Respondents.

1014

**COUNSEL**

Law Offices of Eugene P. Yale, Eugene P. Yale; and David W. Baumgarten for Plaintiff and Appellant.

Thomas A. Leary for Defendants and Respondents.

**OPINION**

**HUFFMAN, J.**—In this case of first impression, we are called upon to reconcile the equitable considerations that arise in connection with a request for specific performance of a contractual arbitration provision, and those equitable factors pertinent to subrogation in the insurance context. Plaintiff and appellant Valley Casework, Inc. (Valley) appeals a judgment confirming an arbitration award against it and an underlying order denying its application for a preliminary injunction for relief from arbitration. (Code Civ. Proc., §§ 1285, 1287.4, 527.)[1] The judgment is in favor of defendant and respondent Comfort Construction, Inc. (Comfort), which jointly pursued the arbitration together with its insurer and subrogee Scottsdale Insurance Company (Scottsdale), which had paid $45,000 to settle a third party claim against its insured, Comfort. Valley now contends that the judgment and order must be

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

reversed because the trial court erred as a matter of law in its rulings that both Comfort and Scottsdale had standing to pursue the arbitration, and the dispute fell within the scope of the subject arbitration clause. Valley argues (1) Comfort was not a real party in interest, suffering no damage, since Scottsdale paid the claim in full on its behalf; (2) Scottsdale was not a party to the contractual arbitration agreement and hence may not participate in arbitration against Valley's will; and (3) the dispute has evolved into a negligence claim for a defective product and hence does not fall under the terms of the contractual arbitration agreement.

The determination of standing to arbitrate as a party to the contractual arbitration agreement is a question of law for the trial court in the first instance. (*Unimart* v. *Superior Court* (1969) 1 Cal.App.3d 1039, 1045-1047 [82 Cal.Rptr. 249].) In this case, under this factual scenario, Valley is correct that the trial court erred, abusing its discretion, in denying Valley's preliminary injunction application to preclude arbitration as pursued by Scottsdale, a nonparty to the arbitration agreement. The judgment and order therefore are reversed with directions to enter a different judgment that sets aside the arbitration award and grants the injunctive relief requested against Comfort/Scottsdale's pursuit of a contractual arbitration forum for resolution of this dispute.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1992 Valley entered into a subcontract with Comfort, the general contractor, to assemble from components and to install simulated woodgrain kitchen and bathroom cabinets in a 34-unit apartment complex Comfort was building for the owner, Danube Properties, Inc. The subcontract included an arbitration clause to the effect that: "If any question arises regarding the work required under this subcontract, or regarding the rights and obligations of contractor and subcontractor under the terms of this agreement or the plans or specifications, such question shall be subject to arbitration. . . . [¶] . . . Should any party refuse or neglect to appear or participate in arbitration proceedings, the arbitrator is empowered to decide the controversy in accordance with whatever evidence is presented."[2]

The subcontract further provided in pertinent part:

---

[2]The arbitration clause next sets forth an attorney fees and costs provision to be enforced by the arbitrator. The arbitration agreement does not contain an indemnity provision; the preprinted one was crossed out by the parties, with the following substitution: "All indemnities provided are only as to the work covered in this subcontract agreement. No third party indemnities are provided."

"Responsibility For Other Crafts: Subcontractor shall assume the full responsibility for defective work of others, if it accepts·said work, or materials, and proceeds with its phase of the work without written notification to contractor.

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Subcontractor shall be bound to contractor to the same extent that contractor is bound to purchaser/owner . . . for any claim, liability, loss, damage, cost, expense, including reasonable attorney(s)' fees, awards, fines or judgments arising by reason of all work which is covered by this agreement."

The cabinets were made up of components supplied by other contractors: fiberboard, etched paper, adhesive/laminate system, and edge foil. After the cabinets were installed, residents of the complex began to complain to building management that the cabinets were becoming stained and discolored. Expert testing later revealed that the porous paper that covered the fiberboard was allowing foreign material (food, cleaning and cosmetic substances) to leak onto the underlying adhesive coating and chemically react, causing stains and discoloration. After the owner made a claim against Comfort's insurer, Scottsdale, Scottsdale paid $45,000 to the owner to settle the claim.

Comfort and Scottsdale then jointly sought arbitration with Valley under the arbitration clause in the construction subcontract, before the American Arbitration Association. Valley tendered its defense to its insurer, Prudential/LMI Insurance Company (LMI), and initially cooperated with the arbitration procedure. However, LMI withdrew its defense. Valley then requested that arbitration be discontinued and an action filed so it could bring a cross-complaint against the component subcontractors (paper supplier DNP and laminate glue system supplier American Adhesive, nonparties to this proceeding). Comfort/Scottsdale declined to discontinue the arbitration proceeding. Valley did not bring any motion for joinder or intervention of any other parties pursuant to section 1281.2.

Shortly before the scheduled hearing date, Valley filed a verified complaint in the superior court for declaratory and injunctive relief. Valley sought to enjoin the defendants from conducting the arbitration on the basis that (1) Comfort did not make any payments to resolve the alleged defective construction claim with the owner, Danube, and was not entitled to any recovery; (2) Scottsdale was not a party to the arbitration agreement and had no standing to compel arbitration; and (3) if there was standing in those

parties, the arbitration clause still did not encompass the tort damages paid out by the insurer, Scottsdale. Hearing on the order to show cause was set for October 24, 1997. On that date, the court initially indicated its tentative ruling was to grant the preliminary injunction, but the ruling issued was to deny on the basis that the public policy in favor of arbitration supported arbitration in this case.[3]

The arbitration proceeded on an uncontested basis, as Valley refused to participate further. The arbitrator made findings that Scottsdale was a subrogee entitled to maintain the arbitration in the name of Comfort, with its consent, and Scottsdale itself was dismissed from the arbitration without prejudice, subject to review and correction by the superior court. Comfort prevailed in the arbitration proceedings and was awarded $45,000 as an indemnity payment for the settlement with the property owner, along with interest, fees and costs.

Comfort then brought a petition to confirm the award. Over opposition by Valley, asserting the same grounds as argued at the preliminary injunction hearing, the petition was granted and judgment entered in favor of Comfort. Valley appeals the judgment. (§§ 904.1, subd. (f), 1294.)[4]

## DISCUSSION

## I

### Applicable Standards

The judgment on review includes the underlying order to deny the preliminary injunction, as well as the order confirming the arbitration award. Section 526, subdivision (a)(2) allows for issuance of an injunction "[w]hen it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action." ■ "Whether a preliminary injunction shall be granted rests largely in the discretion of the trial court and will not be reversed on appeal unless there is a manifest abuse of discretion." (*American Builder's, supra,* 226 Cal.App.3d at pp. 175-176.)

---

[3] The record does not contain any minute order reflecting the denial of the preliminary injunction; however, the reporter's transcript of the hearing is provided, and the parties have no dispute as to the ruling denying the application for preliminary injunction.

[4] "An order granting or denying a preliminary injunction is appealable, as being within the meaning of the provision for appeals in cases involving injunctions. (Code Civ. Proc., § 904.1, subd. (f); [citation].)" (*American Builder's Assn.* v. *Au-Yang* (1990) 226 Cal.App.3d 170, 173, fn. 1 [276 Cal.Rptr. 262] (*American Builder's*).)

■ Where a judgment confirming an arbitration award is on review pursuant to section 1294, an appellate court will not review the merits of the dispute or the arbitrator's reasoning. (*City of Oakland* v. *United Public Employees* (1986) 179 Cal.App.3d 356, 366 [224 Cal.Rptr. 523].) However, an arbitration award must bear some rational relationship to the contract and the breach of contract. (*Advanced Micro Devices, Inc.* v. *Intel Corp.* (1994) 9 Cal.4th 362, 381 [36 Cal.Rptr.2d 581, 885 P.2d 994].) The statutory scheme contemplates that the court will have continuing involvement in the arbitration process. (*California Teachers Assn.* v. *Governing Board* (1984) 161 Cal.App.3d 393, 399 [207 Cal.Rptr. 659]; see 6 Cal.Jur.3d (1988 rev.) Arbitration and Award, § 15, pp. 39-42.) It is settled that the question of whether a nonsignatory to an arbitration agreement may enforce the arbitration provisions is one that must be decided by the court on the basis of the facts found prior to any arbitration going forward. (*American Builder's, supra,* 226 Cal.App.3d at p. 178, citing *Unimart* v. *Superior Court, supra,* 1 Cal.App.3d at pp. 1045, 1047.) We review de novo the determination regarding the permissible scope of the arbitration proceedings because the ruling on the preliminary injunction application turned upon that question of law. (*Bullock* v. *City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1094-1095 [271 Cal.Rptr. 44].)[5]

## II

### *Arbitrability*

■ With these dual standards of review before us, we turn to Valley's twin objections of standing and arbitrability of this dispute. As a threshold matter, we first dispose of Valley's weak argument that the issue of responsibility for the defects in the cabinets, even though it later resulted in the insurer's payment of $45,000 to settle the dispute, did not constitute an issue within the scope of the arbitration agreement. That arbitration clause expressly covers any question arising "regarding the work required under this subcontract, or regarding the rights and obligations of contractor and subcontractor under the terms of this agreement or the plans or specifications," and provides that such a question shall be subject to arbitration. Construing this arbitration clause de novo as a matter of contractual interpretation, quite apart from the other issues of standing to pursue the arbitration, we conclude

[5]Comfort and Scottsdale contend that Valley is barred from seeking appellate relief since it failed to file in the trial court a motion to vacate or correct the award pursuant to section 1288. We disagree because this record includes the questions of law presented by the preliminary injunction application and is not based solely upon the merits of the arbitration agreement. The authority Comfort and Scottsdale rely upon, *Knass* v. *Blue Cross of California* (1991) 228 Cal.App.3d 390 [279 Cal.Rptr. 124], is distinguishable in that respect.

the language is not as narrow as Valley claims; rather, it broadly covers the problem presented here regarding the work performed or the specifications thereof. Moreover, the subcontract also included a provision that Valley agreed to assume the full responsibility for defective work of others, if it accepted the work or materials and then proceeded with its phase of the work. The arbitration agreement clearly provides for arbitrability of this underlying dispute over the work performed.

The more difficult question presented is that regarding standing, since Comfort and Scottsdale were allied in interest to pursue the arbitration, yet Scottsdale is not a party to the subcontract and its arbitration agreement. The findings of the arbitrator were that Scottsdale was a subrogee that was entitled, with Comfort's consent, to pursue the arbitration. To examine the standing issues, we are required to set forth the rules governing what types of nonsignatories to arbitration agreements have been allowed to enforce the agreements and to evaluate Scottsdale's position as the insurer and subrogee here.

## III

### Standing

Section 1281 allows an arbitration agreement to be enforced except "upon such grounds as exist for the revocation of any contract." ▮ A proceeding to compel arbitration is equivalent to an equitable action for specific performance of a contract. (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341].) Such enforcement may be sought by a party to the arbitration agreement. (§ 1280, subd. (e)(1).) However, in many cases, nonparties to arbitration agreements are allowed to enforce those agreements where there is sufficient identity of parties. For example, defendants who are not signatories to an arbitration agreement, but who are acting as agents for the party to the arbitration provision, may be allowed to enforce the arbitration clause. (*Dryer* v. *Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [220 Cal.Rptr. 807, 709 P.2d 826].) A person who voluntarily joins an arbitration proceeding becomes a party to it and may be estopped from claiming to be exempt from the mandatory arbitration procedure. (*Lovret* v. *Seyfarth* (1972) 22 Cal.App.3d 841, 859-862 [101 Cal.Rptr. 143].) An individual partner may be required to submit to arbitration where the partnership has agreed to that manner of dispute resolution. (See 6 Cal.Jur.3d, *supra*, Arbitration and Award, § 8, pp. 30-32.) Further, a person who can show he is a third party beneficiary of an arbitration agreement may be entitled to enforce that agreement. (*Arista Films, Inc.* v. *Gilford Securities,*

*Inc.* (1996) 43 Cal.App.4th 495, 500-503 [51 Cal.Rptr.2d 35].) Where a construction contract or subcontract incorporates the arbitration procedures found in the related contract, arbitration may be ordered. (See *Boys Club of San Fernando Valley, Inc.* v. *Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1274 [8 Cal.Rptr.2d 587]; *Slaught* v. *Bencomo Roofing Co.* (1994) 25 Cal.App.4th 744, 751 [30 Cal.Rptr.2d 618].) Other examples may be found in 6 Witkin, California Procedure (4th ed. 1997) Proceedings Without Trial, section 499, pages 929-932, which sets forth a variety of defenses to enforcement of an arbitration agreement.[6]

Comfort and Scottsdale are jointly represented in this appeal, as they were at trial, and contend that their interests are sufficiently identical so that either or both should be entitled to enforce the Comfort-Valley arbitration agreement. Valley contends that if Comfort is deemed the party, it has no standing as a real party in interest because its debt to the owner, Danube, was fully paid by Scottsdale through its insurance agreement. (§ 367.) Valley alternatively contends that Scottsdale, as a nonparty to the agreement, is not entitled to enforce it because issues of subrogation are not covered by the arbitration agreement, but are more suitable for resolution in the forum of a jury trial, where Valley intends to assert its "jury appeal" as a small company fighting a big insurer. Whatever merit that emotional argument may have, the issue is a pure question of law, which must be resolved in this appeal of the judgment and order denying the preliminary injunction, and on this record.

As stated in *American Builder's, supra,* 226 Cal.App.3d 170, the modern judicial view of arbitration seeks to achieve the following balance: "We are mindful that arbitration submissions are usually construed as broadly as possible in order that differences between the parties may be resolved quickly and economically, and that an arbitrator is authorized to determine all questions necessary to resolve the controversy submitted for decision. [Citation.] However, 'judicial enthusiasm for alternative methods of dispute resolution "must not in all contexts override the rules governing the interpretation of contracts[,]" as the policy favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate. [Citations.]' " (*Id.* at p. 179.)

The other side of the coin in this case is equitable subrogation, which represents "the substitution of another person in place of the creditor or

---

[6]We consider only the issue of whether a nonparty to an arbitration agreement may enforce the agreement. We do not decide under what circumstances arbitration may be compelled *against* a nonsignatory of the agreement.

claimant to whose rights he or she succeeds in relation to the debt or claim." (*Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1291 [77 Cal.Rptr.2d 296].) As further explained in that opinion: "By undertaking to indemnify or pay the principal debtor's obligation to the creditor or claimant, the 'subrogee' is equitably *subrogated* to the claimant (or 'subrogor'), and succeeds to the subrogor's rights against the obligor. [Citation.] In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid. [Citations.] ' "As now applied [the doctrine of equitable subrogation] is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." [Citations.]' " (*Id.* at pp. 1291-1292.)

It is not disputed here that Scottsdale has a right to pursue its claim for equitable subrogation against Valley for the amount it paid to settle the claims against its insured, Comfort. The question is in what forum should that claim be resolved. Following the lead of the rules stated above, we first note that Comfort and Scottsdale have provided no authority for the application of the equitable doctrine of subrogation in the contractual arbitration context. At oral argument, both parties conceded they are aware of no cases that resolve the interplay between the these two doctrines, nor has our independent research disclosed any. Absent such authority, the issues presented in this appeal must be dealt with in terms of the balancing of equities that the trial court was required to consider in the preliminary injunction proceedings, and that must be considered in review of that order. Restated, the question is whether requiring contractual arbitration to proceed, precluding the jury trial that Valley apparently wishes to pursue, amounts to great or irreparable injury to a party to the action. (§ 526; *American Builder's, supra,* 226 Cal.App.3d at p. 176.)

It is well settled that the scope of an arbitration award must be within the scope of the issues submitted. (*Crofoot* v. *Blair Holdings Corp.* (1953) 119 Cal.App.2d 156 [260 P.2d 156], disapproved on another point in *Posner* v. *Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 183-184 [14 Cal.Rptr. 297, 363 P.2d 313].) At arbitration, the issues submitted would have to have been restricted to the nature and quality of the work performed under the subcontract or the specifications, not the respective liabilities of all the involved parties (not all of whom were parties to the contractual arbitration agreement). Before that arbitration commenced, the trial court was presented with

the injunction request, which challenged the ability of Scottsdale to enforce the arbitration agreement in the construction subcontract. By denying the injunction, the trial court went beyond the scope of the contractual issues presented, into the equitable arena of subrogation law, but failed to resolve the issues correctly. The complaint and declarations roughly outlined legal issues that should have remained within the province of the trial court and should never have reached the arbitrator. (*Unimart* v. *Superior Court, supra,* 1 Cal.App.3d at pp. 1045-1047.) Due to the record showing the injunction application, such jurisdictional issues have not been waived nor is there estoppel to raise them on this appeal.

For all the reasons discussed above, there is simply no basis on this record to conclude that Scottsdale, as a nonparty to the arbitration agreement, should be allowed to enforce it. Nor may arbitration proceed on Comfort's behalf in this context, where it is undisputed that equitable subrogation issues must be resolved. The contractual arbitration agreement cannot be stretched so far, and the trial court erred in its balancing of the equities by denying the injunction that would have precluded arbitration in this peculiar factual setting. We conclude the judgment confirming the arbitration award must be reversed, with directions to the trial court to grant the injunctive relief requested on a permanent basis, thus precluding arbitration in this procedural posture, and further, allowing the appropriate litigation to proceed to resolve the subrogation issues presented.

## DISPOSITION

The judgment and order are reversed with directions to enter a different judgment that sets aside the arbitration award and grants the injunctive relief requested against Comfort/ Scottsdale's pursuit of a contractual arbitration forum for resolution of this dispute. Each party to bear its own costs on appeal.

Benke, Acting P. J., and McIntyre, J., concurred.