No.  2--01--1076    

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

CHARLES and PAMELA BAHURIAK,        
 ) Appeal from the Circuit Court

) of Du Page County. 

Plaintiffs-Appellees,  ) 

) 

v. ) No. 01--CH--488

)
      

BILL KAY CHRYSLER PLYMOUTH,  )

INC.,  ) Honorable

  )  Bonnie M. Wheaton, 

Defendant-Appellant.  )  Judge, Presiding.

Modified Upon Denial of Rehearing

JUSTICE KAPALA delivered the opinion of the court:

Plaintiffs, Charles and Pamela Bahuriak, filed a four-count complaint against defendant, Bill Kay Chrysler Plymouth, Inc. (Bill Kay Chrysler), after Charles purchased a 2000 Chrysler Sebring and traded in a 1996 BMW Z3 convertible owned by him and Pamela.  Thereafter, Bill Kay Chrysler filed a motion to stay the proceedings and compel arbitration pursuant to the Federal Arbitration Act (9 U.S.C. §1 
et
 
seq
. (2000)) (Federal Act) and  the Illinois Uniform Arbitration Act (710 ILCS 5/1 (West 2000)) (Illinois Act).  Bill Kay Chrysler appeals from the order of the circuit court of Du Page County denying that motion. 

I. BACKGROUND

According to the allegations in plaintiffs' complaint, on Saturday, October 21, 2000, Charles entered into a contract to purchase from Bill Kay Chrysler a new, 2000 model year Chrysler Sebring convertible for $27,393.50.  The vehicle purchase agreement provided that Charles would receive a rebate of $2,500 on the purchase price of the Sebring and a trade-in allowance of $14,000 for the BMW. 

Along with the purchase agreement, Charles signed an arbitration agreement that provided:

"You and we agree that if any [d]ispute arises, the [d]ispute will be resolved by binding arbitration by a single arbitrator under the rules of the Better Business Bureau then in effect, and such arbitration shall be held in either Wheaton or Chicago, Illinois, with the arbitrator rendering a written decision ***." 

The arbitration agreement further provided:

"A [d]ispute is any controversy or claim (other than: a  claim relating to the buyer's failure to pay an agreed upon down payment or failure to pay any amount due pursuant to a promissory note executed in lieu of a cash down payment; as to the issuance, by buyer, of a check which is not honored by the buyer's bank; a buyer's failure to provide good title to a trade in vehicle; any claim relating to possession, repossession or replevin of the vehicle; or relating to actions to enforce any [r]etail [i]nstallment [c]ontract executed by you in connection with the purchase of the vehicle) arising from or relating to the vehicle you have purchased from us on the date shown above."

On October 21, 2000, in accordance with the purchase agreement, Charles paid the balance due on the Sebring in cash and took delivery of the vehicle.  Additionally, after signing the title, he surrendered the BMW to Bill Kay Chrysler.  However, Pamela, Charles's wife and co-owner of the BMW, had not signed the title.  On Monday, October 23, 2000, Charles telephoned Bill Kay Chrysler and advised that Pamela would not sign the title to the BMW and did not agree to the transaction.  Charles requested the return of his BMW and offered to pay in cash the $14,000 he owed on the Sebring.  Bill Kay Chrysler refused to return the BMW and informed Charles that the BMW had already been sold.      

On April 4, 2001, plaintiffs filed a four-count complaint. Counts I, II, and III were brought by Charles and Pamela.  Count IV was brought by Pamela alone.  In count I, plaintiffs alleged a cause of action for rescission and cancellation of the contract based on fraud in the inducement.  Plaintiffs alleged that agents of Bill Kay Chrysler knowingly made the following misrepresentations, which induced Charles to enter into the purchase agreement: (1) that the transaction could not and would not be final until Pamela signed the title to the BMW and agreed to the amount of the trade-in allowance, and (2) that the trade-in value of the BMW was $14,000 (plaintiffs alleged that the value of the BMW was at least $20,000).  Plaintiffs also alleged that the contract to purchase was at all times contingent on and subject to the trade-in of plaintiffs' BMW, which would require Pamela's consent and her signature on the title.  Plaintiffs further alleged that agents of Bill Kay Chrysler forged Pamela's signature on the title to the BMW.  In counts II and III, plaintiffs alleged that the same allegations constituted a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et
 
seq
. (West 2000)) and a cause of action in common law fraud.  In count IV, Pamela alleged that Bill Kay Chrysler unlawfully converted her convertible.

On May 11, 2001, Bill Kay Chrysler filed two pleadings: a motion to stay the proceedings and compel arbitration of Charles's claims pursuant to the Federal Act (9 U.S.C. §1 
et
 
seq
. (2000)) and the Illinois  Act (710 ILCS 5/1 
et
 
seq
. (West 2000)); and a "motion to strike and dismiss Pamela Bahuriak's complaint" pursuant to section 2--615 of the Code of Civil Procedure (735 ILCS 5/2--615 (West 2000)). 

On September 6, 2001, the circuit court denied Bill Kay Chrysler's motion to stay the proceedings and compel arbitration. The circuit court's order provided, "Defendant's motion to stay and compel arbitration is denied based on the fact that the allegations in the complaint come as one of [the] exceptions of [the] arbitration agreement."  The circuit court also denied Bill Kay Chrysler's motion to strike and dismiss the complaint as filed on behalf of Pamela.  Bill Kay Chrysler now appeals the denial of its motion to stay the proceedings and compel arbitration pursuant to Supreme Court Rule 307(a)(1) (155 Ill. 2d R. 307(a)(1)).

II. ANALYSIS

On appeal, Bill Kay Chrysler contends that (1) the circuit court erred in deciding whether Charles's claims were arbitrable, rather than submitting the issue of arbitrability to arbitration; (2) the circuit court erred in holding that Charles's claims fall within the arbitration agreement's exceptions to arbitrable disputes; and (3) Pamela's claims are also arbitrable under the arbitration agreement.

Both the Federal Act and the Illinois Act provide that a party to an arbitration agreement may, upon an opposing party's refusal to arbitrate, seek an affirmative order from the circuit court to stay the proceedings and compel arbitration in accordance with the terms of the arbitration agreement.  See 9 U.S.C. §3 
(2000); 710 ILCS 5/2 
(West 2000).  An agreement to arbitrate a dispute is a matter of contract, and the parties to such a contract are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the language of the agreement.  
Salsitz v. Kreiss
, 198 Ill. 2d 1, 13 (2001).
  In its brief, Bill Kay Chrysler asserts that the circuit court determined the arbitrability of Charles's claims without holding an evidentiary hearing or making any factual findings.  The record on appeal contains only the circuit court's common-law record, and, having no reports of the proceedings held in the circuit court, we will assume that the circuit court's decision was made as a matter of law and conduct a 
de
 
novo
 review.  See 
Amalgamated Transit Union, Local 900 v. Suburban Bus Division of the Regional Transportation Authority
, 262 Ill. App. 3d 334, 337 (1994) (where circuit court determined arbitrability without making factual findings, its decision was made as a matter of law and was reviewable 
de
 
novo
).

In denying Bill Kay Chrysler's motion to stay and compel arbitration, the circuit court determined that Charles's claims were not arbitrable because they fit into one or more of the exceptions to the term "dispute" as defined in the arbitration agreement.  Bill Kay Chrysler contends that an arbitrator, and not the circuit court, should have decided whether the claims were arbitrable because the parties specifically agreed to submit any issues of arbitrability to arbitration.  We agree and, consequently, reverse the circuit court's order denying Bill Kay Chrysler's motion to stay and compel arbitration of Charles's claims.

At the outset we note that the circuit court did not indicate whether this matter is governed by the Illinois Act or, because it involves interstate commerce, the Federal Act.  On appeal, Bill Kay Chrysler contends that the Federal Act applies but also points out that the parties agreed in the arbitration agreement that the transaction involved interstate commerce and that both Acts apply.  Plaintiffs have not suggested which Act applies.

The law that is applied in determining whether the circuit court or an arbitrator initially decides whether a given claim is arbitrable makes a significant difference.  If the Illinois Act applies in this case, the arbitrator might be required to initially determine the arbitrability of Charles's claims.  Under the Illinois Act, the circuit court makes the initial arbitrability determination where language of the arbitration agreement is clear and it is apparent that the dispute sought to be arbitrated falls within or without the scope of the arbitration clause.  
Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr
, 124 Ill. 2d 435, 445 (1988).  However, "when the language of an arbitration clause is broad and it is unclear whether the subject matter of the dispute falls within the scope of [the] arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator."  
Donaldson, Lufkin & Jenrette Futures, Inc.
, 124 Ill. 2d at 447-48.  On the other hand, if the Federal Act applies, the court itself is to determine whether the claims are arbitrable.  See 
AT&T Technologies, Inc. v. Communications Workers of America
, 475 U.S. 643, 651, 89 L. Ed. 2d 648, 657, 106 S. Ct. 1415, 1420 (1986).  In any event, we need not decide which law is applicable because the arbitration agreement at issue here specifies that the parties agree to arbitrate the arbitrability of claims.

Under the Federal Act and the Illinois Act, courts have recognized that parties are free to agree to submit the question of arbitrability itself to arbitration.  See
 
First Options of Chicago, Inc. v. Kaplan
, 514 U.S. 938, 943-45, 131 L. Ed. 2d  985, 992-94, 115 S. Ct. 1920, 1923-25 (1995) (under the Federal Act and the case law interpreting it, the question of whether a claim is arbitrable is independently decided by the courts, unless the parties "clear[ly] and unmistakab[ly]" agree to allow the arbitrator to decide arbitrability); 
Salsitz v. Kreiss
, 198 Ill. 2d 1, 14 (2001). 
The arbitration agreement at issue in this case provides in pertinent part that "[t]he term 'dispute' also includes any question regarding whether a matter is subject to arbitration under this Arbitration Agreement."  It is clear that the parties have expressly agreed to arbitrate the issue of arbitrability.  Accordingly, the circuit court erred in making the decision as to the arbitrability of Charles's claims by deciding that they fall within the exceptions to arbitrable disputes contained in the arbitration agreement.

The foregoing determination does not, however, end our inquiry.  In considering a motion to compel arbitration, there is an issue to be determined before reaching the arbitrability of a given claim or dispute, namely, whether the parties actually entered into an arbitration agreement.  The issue of whether a contract to arbitrate exists must be determined by the court, not an arbitrator.  
Aste v. Metropolitan Life Insurance Co.
, 312 Ill. App. 3d 972, 982 (2000).  "Whether under federal rules or state law, there is no arbitration without a valid contract to arbitrate."  
Aste
, 312 Ill. App. 3d at 975.  Section 2(a) of the Illinois Act provides:

"(a) On application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, 
but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised
 and shall order arbitration if found for the moving party, otherwise, the application shall be denied."  (Emphasis added.) 710 ILCS 5/2(a) (West 2000).

Similarly, section 4 of the Federal Act provides, in pertinent part, "If the making of the arbitration agreement *** be in issue, the court shall proceed summarily to the trial thereof."  9 U.S.C. §4 (2000). 

In their response to Bill Kay Chrysler's motion to stay and compel arbitration, plaintiffs clearly deny the existence of an arbitration agreement.  Therefore, the trial court's failure to make a finding with respect to the existence of an agreement to arbitrate was error.  See 
J&K Cement Construction, Inc. v. Montalbano Builders, Inc.
, 119 Ill. App. 3d 663, 669 (1983).  Consequently, we remand this cause to the circuit court.  On remand, the circuit court is directed to make the findings necessary to determine whether there was an agreement to arbitrate Charles's claims, and then rule on Bill Kay Chrysler's motion to stay and compel arbitration.

The parties have made various arguments as to the existence of an agreement to arbitrate Charles's claims.  For example, plaintiffs claim that Pamela's approval of the amount of the trade-in allowance for the BMW and her agreement to trade in the BMW were conditions precedent to the formation of the contract to purchase the Sebring, which in turn, they argue, determines the existence of the arbitration agreement.  On the other hand, Bill Kay Chrysler has argued that the contract was ratified by Charles's retention of the Sebring, and that, even if there was no contract to purchase the Sebring, the arbitration agreement is enforceable independent of the contract.  These, and any other arguments as to the existence of an agreement to arbitrate, should be addressed to the trial court on remand.

Bill Kay Chrysler takes the position that the circuit court  implicitly, if not expressly, found that there was a valid and enforceable arbitration agreement.  With only the circuit court's one-sentence explanation for denying the motion to stay and compel arbitration at our disposal, we can only speculate as to whether the circuit court considered this issue.  It is possible that the circuit court assumed the existence of an arbitration agreement without deciding that issue.  In any event, if the circuit court did hold implicitly that there was a valid arbitration agreement, we would reverse that finding because it is not supported by factual findings.

Finally, Bill Kay Chrysler contends, for the first time on appeal, that Pamela's claims are arbitrable.  We decline to decide  this issue, as it was not presented to the circuit court.  This stands to reason, as the motion to stay and compel arbitration did not seek an order compelling Pamela to arbitrate her claims.  In the prayer for relief at the end of its motion, Bill Kay Chrysler sought only:

 "an order staying these proceedings, and compelling arbitration, pursuant to the Federal Arbitration Act [citation], and §2 of the Illinois Uniform Arbitration Act [citation], for all of the disputes raised in Charles Bahuriak's complaint, together with any other relief which this court deems just and appropriate."

As an alternate basis for affirming the circuit court's order, plaintiffs contend that Bill Kay Chrysler has waived any right it may have had to arbitration by filing a section 2--615 motion to strike and dismiss.  We disagree. 

Waiver of the right to arbitration occurs when a party's conduct is so inconsistent with the arbitration clause as to demonstrate abandonment of that right or when the party submits arbitrable issues to the court for decision.  
Lundy v. Farmers Group, Inc.
, 322 Ill. App. 3d 214, 219 (2001).  After plaintiffs filed their complaint, Bill Kay Chrysler responded with a motion to stay the proceedings and compel arbitration of Charles's claims and a section 2--615 motion (735 ILCS 5/2--615 (West 2000)) to strike and dismiss Pamela's claims.  As explained in its reply brief, Bill Kay Chrysler filed the motion to compel the arbitration of Charles's claims because Charles signed an arbitration agreement.  However, because Pamela did not sign an arbitration agreement, Bill Kay Chrysler found it necessary to respond to her claims and did so with a motion to strike and dismiss Pamela's claims as substantially insufficient at law.  Obviously, filing the motion to stay and compel arbitration of Charles's claims was not inconsistent with Bill Kay Chrysler's purported right to arbitration.  To the extent that Bill Kay Chrysler's section 2--615 motion to strike and dismiss submitted substantive issues to the circuit court, those issues related to Pamela's claims, not Charles's.  Accordingly, we hold that, to the extent it possesses such a right, Bill Kay Chrysler did not waive its right to arbitrate Charles's claims.  We express no opinion as to whether Bill Kay Chrysler has waived any right to arbitrate Pamela's claims.

III. CONCLUSION

     For the foregoing reasons, the judgment of the circuit court of Du Page County denying Bill Kay Chrysler's motion to stay and compel arbitration is reversed.  The cause is remanded to the circuit court with directions. 

Reversed and remanded with directions.

BOWMAN and GROMETER, JJ., concur.