No. 2--09--0544    Filed: 11-10-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| FORD MOTOR CREDIT COMPANY, d/b/a | ) | Appeal from the Circuit Court |
| Jaguar Credit, and TINLEY PARK J. | ) | of Du Page County. |
| IMPORTS, INC., d/b/a Jaguar of Tinley Park, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 09--CH--1891 |
| | ) | |
| LINDA CORNFIELD, | ) | Honorable |
| | ) | Bonnie M. Wheaton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Linda Cornfield, submitted an arbitration demand for claims against plaintiffs, Ford Motor Credit Company, d/b/a Jaguar Credit (Ford Credit), and Tinley Park J. Imports, Inc., d/b/a Jaguar of Tinley Park (Jaguar of Tinley Park), arising from defendant's 2004 purchase of a used Jaguar. Plaintiffs in turn filed a complaint for a declaratory judgment in the trial court, seeking a declaration that defendant's previous settlement with the car's manufacturer barred her claims against plaintiffs under the doctrines of res judicata and collateral estoppel and the prohibition against claim splitting. Plaintiffs also argued that certain statutes of limitation applied. In conjunction with their complaint, plaintiffs filed a motion for a temporary retraining order and preliminary injunction staying the arbitration proceedings pending a ruling on the declaratory judgment action. Defendant countered

by filing a motion to stay the trial court proceedings and compel arbitration. The trial court denied plaintiffs' motion and granted defendant's motion. On appeal, plaintiffs argue that the trial court erred in denying their request for a preliminary injunction and granting defendant's motion to stay the proceedings and compel arbitration. We affirm.

I. BACKGROUND

A. Underlying Action Against Jaguar Cars

Defendant purchased a used 2003 Jaguar from Jaguar of Tinley Park on June 30, 2004. Jaguar of Tinley Park assigned the retail installment sales contract (RIC) to Ford Credit. In June 2006, defendant and her husband (the Cornfields) filed an action solely against the car's manufacturer, Jaguar RAV, a/k/a Jaguar Cars (Jaguar Cars). They filed a second amended, four-count complaint against Jaguar Cars on June 18, 2007, alleging as follows. The vehicle came with a 4-year, 50,000-mile warranty, followed by a Jaguar "Reacquired Vehicle Limited Warranty" until June 30, 2009, or 100,000 miles. The warranties provided that Jaguar Cars would repair or replace free of charge any nonconformities in the material or workmanship.

Count I of the second amended complaint against Jaguar Cars alleged that it had breached its written warranties under the Magnuson-Moss Warranty -- Federal Trade Commission Improvement Act (15 U.S.C. §2301 et seq. (2000)) and Illinois law, in that the car was subject to at least 12 repair attempts, rendering it defective and unsafe to drive. Jaguar Cars had allegedly failed to repair or replace the car without charge. The Cornfields revoked their acceptance of the car on January 20, 2006, but Jaguar Cars refused to accept the revocation. For count I, the Cornfields sought judicial cancellation and revocation of the purchase contract; monetary damages for, among other things, the purchase price of the car and cancellation of the RIC; and attorney and other fees. Count II alleged

breach of implied warranty of merchantability under the Magnuson-Moss Warranty Act and Illinois law. It alleged that the car was defective and it requested the same types of damages as count I. Count III alleged common-law fraud in that Jaguar Cars misrepresented that the vehicle had not been subject to a "lemon law" ruling, failed to disclose that it had actually reacquired the car based on a "lemon law" ruling, and misrepresented that the vehicle had been inspected and was in a safe and reliable condition. For this count, the Cornfields sought actual and punitive damages, the rescission and revocation of all contracts, and the deletion of the "trade-line." Count IV alleged breach of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 2004)). It incorporated the factual allegations of count III and further alleged that Jaguar Cars' misrepresentations, failures to disclose, and refusals to accept the Cornfields' revocation/rescission of their contracts violated the Consumer Fraud Act. It requested the same relief as count III.

An agreed order filed on July 29, 2008, dismissed the case between the Cornfields and Jaguar Cars "pursuant to settlement." The order further states that Jaguar Cars agreed to pay the amounts set forth in the Cornfields' petition for attorney fees and costs.

The settlement agreement between the Cornfields and Jaguar Cars is dated August 28, 2008. It recites that the agreement was between the two parties and specifically mentions that Jaguar of Tinley Park was not a party to the court case or the settlement agreement. The Cornfields agreed to release Jaguar Cars from any claims they had in connection with their car. The parties agreed "to the entry of an order of dismissal with prejudice of all claims pending in the aforementioned court action." They also agreed that Jaguar Cars "shall ask the lender to delete the trade line from CORNFIELDS' [sic] credit report." Jaguar Cars agreed to pay the Cornfields $57,000, exclusive of attorney fees.

B. Arbitration Demand Against Plaintiffs

On November 12, 2008, defendant filed an American Arbitration Association demand against plaintiffs, also stemming from her purchase of the Jaguar. The arbitration demand was brought pursuant to an arbitration provision in the RIC. It provides that a party:

"may choose, at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. Such Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) Claims regarding the interpretation, scope, or validity of this clause, or arbitrability of any issue; 3) Claims between you and us, our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract."

The arbitration provision states that it is subject to the Federal Arbitration Act (9 U.S.C. §1 et seq. (2000)).

In an amended demand, defendant alleged the following. The Cornfields purchased the car, which had over 28,000 miles on it, for over $33,500. Jaguar of Tinley Park represented that the car had been reacquired to promote customer goodwill and that it came with a " 'Jaguar Cars 12 months/12,000 mile limited warranty.' " It also included a warranty until June 30, 2009, or 100,000 miles, whichever came first. The Cornfields began to immediately experience mechanical problems with the vehicle, and the problems continued throughout the car's life. The Cornfields brought the car back to Jaguar of Tinley Park numerous times, and each of the repair orders provided that parts and labor were guaranteed for 12 months or 12,000 miles. The Cornfields repeatedly asked that the

transaction be revoked and plaintiffs cancel the sale, but plaintiffs did not accept their request. The Cornfields hired an expert to inspect the vehicle. He stated that the car had a long history of transmission and other problems that were never properly repaired. Due to the transmission problems, the car had been bought back through a "lemon law" in California. It was then purchased wholesale in Illinois. The expert opined that due to the problems, the car was worth only $9,741 when the Cornfields bought it.

Based on these allegations, defendant asserted the following claims against Jaguar of Tinley Park: (1) breach of written warranty under the Magnuson-Moss Warranty Act; (2) breach of implied warranty of merchantability under the Magnuson-Moss Warranty Act; (3) violations of the Consumer Fraud Act for deceptive and unfair conduct; and (4) revocation of acceptance of goods. Defendant sought relief in the form of the car's full purchase price; out-of-pocket expenses; damages for loss of use, aggravation, and inconvenience and other compensatory damages; and punitive damages under the Consumer Fraud Act. Regarding Ford Credit, defendant sought cancellation and revocation of all contracts and refund of the money she had paid to Ford Credit. Defendant further sought attorney fees and costs against both plaintiffs.

Subsequent to defendant's filing of the arbitration demand, plaintiffs filed a petition to intervene in the action between the Cornfields and Jaguar Cars. The trial court denied the motion on March 5, 2009, based on a lack of jurisdiction.

C. Plaintiffs' Action Against Defendant

Plaintiffs filed their complaint for a declaratory judgment and their motion for a temporary restraining order and preliminary injunction on April 29, 2009. On May 5, 2009, the trial court denied plaintiffs' motion for a temporary restraining order but set another date for a hearing on their

request for a preliminary injunction. On May 15, 2009, defendant filed a motion to stay plaintiffs' action and compel arbitration.

The trial court heard the pending motions on May 18, 2009. The trial court stated that the parties' motions were "two sides to the same coin," and before they got "into any evidentiary hearing, which would be encompassed in a preliminary injunction," the parties should argue the issues "as a matter of law." After hearing arguments, the trial court stated that "the concept of res judicata necessarily, necessarily [sic] involves an adjudication of a claim or defense," and there was nothing in the order dismissing the case between the Cornfields and Jaguar Cars that decided any issue or made any award. The trial court stated that it could not, "as a matter of law," grant plaintiffs a preliminary injunction, because plaintiffs had not shown a likelihood of success on the merits; the trial court did not believe that res judicata or collateral estoppel applied. The trial court further stated that it did not believe that plaintiffs had shown an irreparable injury or an inadequate remedy at law. The trial court granted defendant's motion to stay the action and compel arbitration, and it denied plaintiffs' motion for a preliminary injunction. The trial court also denied plaintiffs' oral motion for a stay pending appeal.

Plaintiffs timely filed this interlocutory appeal under Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)). On June 5, 2009, we granted plaintiffs' motion to stay the trial court's ruling compelling arbitration, under Supreme Court Rule 305(d) (210 Ill. 2d R. 305(d)).

## II. ANALYSIS

### A. Motion

We first address defendant's "motion," incorporated into her brief, to strike or ignore argument contained in plaintiffs' statement of facts. We note that defendant failed to properly file this

"motion." See 735 ILCS 5/2--620 (West 2008); 210 Ill. 2d R. 361(a); Advincula v. United Blood Services, 176 Ill. 2d 1, 7 (1996). In any event, we will disregard any improper comments in plaintiffs' statement of facts and remind plaintiffs that any arguments and commentary should be confined to the argument section of their brief. See 210 Ill. 2d R. 341(h)(6).

### B. Standard of Review

We now turn to the question of the applicable standard of review. Plaintiffs assert that the de novo standard applies whereas defendant submits that an abuse of discretion standard applies. In interlocutory appeals, the trial court's decision to grant or deny the relief requested is generally reviewed under an abuse of discretion standard. Czarnik v. Wendover Financial Services, 374 Ill. App. 3d 113, 116 (2007). However, if the trial court does not make any factual findings and rules on a question of law, we review its decision de novo. See Czarnik, 374 Ill. App. 3d at 116. These same principles also specifically apply to a trial court's ruling on a request for a preliminary injunction. We typically review such decisions for an abuse of discretion but will review de novo a ruling involving a matter of law. Jones v. Department of Public Aid, 373 Ill. App. 3d 184, 193 (2007). But cf. Northeast Illinois Regional Commuter R.R. Corp. v. Chicago Union Station Co., 358 Ill. App. 3d 985, 993-95 (2005) (applying abuse of discretion standard). In this case, the trial court did not make any factual findings, explicitly stated that the parties should argue the issues "as a matter of law," and stated that it was ruling "as a matter of law." Accordingly, we will review its ruling de novo.

### C. Preliminary Injunction

Plaintiffs challenge the trial court's denial of their motion for a preliminary injunction. A preliminary injunction serves to preserve the status quo until the merits of a cause have been decided. Rochester Buckhart Action Group v. Young, 379 Ill. App. 3d 1030, 1033 (2008). The grant of a

preliminary injunction is an extraordinary remedy, and courts do not favor their issuance. People ex rel. Madigan v. Excavating & Lowboy Services, Inc., 388 Ill. App. 3d 554, 565 (2009). A plaintiff seeking a preliminary injunction must show: (1) a clearly ascertainable right needing protection; (2) irreparable harm will occur without the injunction; (3) no adequate remedy at law exists; and (4) there is a substantial likelihood of success on the merits of the underlying action. Rochester Buckhart Action Group, 379 Ill. App. 3d at 1034.

In this case, the trial court focused on the fourth element, whether plaintiffs showed a substantial likelihood of success on the merits of their declaratory judgment action, and we similarly focus on this element. To show a likelihood of success on the merits, a party does not have to meet the same burden of proof that is required at the final hearing. Stenstrom Petroleum Services Group, Inc. v. Mesch, 375 Ill. App. 3d 1077, 1089 (2007). Rather, for the "first and fourth requirements, 'a plaintiff need only raise a fair question as to the existence of the right which [it] claims and lead the court to believe that [it] will probably be entitled to the relief requested if the proof sustains [its] allegations.' " Stenstrom Petroleum Services Group, Inc., 375 Ill. App. 3d at 1089, quoting LSBZ, Inc. v. Brokis, 237 Ill. App. 3d 415, 425 (1992).

We initially note that plaintiffs do not dispute that they signed the RIC containing the arbitration provision or were otherwise originally bound by it. They also do not appear to dispute that in the absence of the Cornfields' litigation and settlement with Jaguar Cars, the provision would require arbitration of defendant's allegations. Rather, plaintiffs argue that in light of the Cornfields' prior action against Jaguar Cars, they have raised a fair question as to the applicability of the doctrines of res judicata, collateral estoppel, waiver, and the prohibition against claim splitting. However, for

plaintiffs to prevail on their underlying request for a declaratory judgment, the authority to decide the applicability of these doctrines would need to rest with the trial court, rather than the arbitrator.

Under Illinois arbitration law, namely section 2(b) of the Uniform Arbitration Act (Illinois Act) (710 ILCS 5/2(b) (West 2008)), a trial court "may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate." "The issue of whether a dispute is beyond the scope of the agreement to arbitrate, by reason of a prior arbitration, may be tested in the courts under section 2 of the Act." Horwitz, Schakner & Associates, Inc. v. Schakner, 252 Ill. App. 3d 879, 883 (1993). Under the Illinois Act, it is the role of the trial court, rather than the arbitrator, to determine the res judicata or collateral estoppel effect of a prior arbitration award (Monmouth Public Schools, District No. 38 v. Pullen, 141 Ill. App. 3d 60, 66-67 (1985)) or a prior judgment (Peregrine Financial Group, Inc. v. Ambuehl, 309 Ill. App. 3d 101, 107 (1999)). "[A]lthough there is a broad presumption of arbitrability premised on the right to contract, arbitration cannot be intended to afford a litigant an opportunity to relitigate a dispute that has been previously resolved by a court of competent jurisdiction." Czarnik, 374 Ill. App. 3d at 117. Thus, if the Illinois Act applied, plaintiffs could properly seek a stay of arbitration based on claims of collateral estoppel and res judicata. The rule against claim splitting is encompassed within the doctrine of res judicata (see Saxon Mortgage, Inc. v. United Financial Mortgage Corp., 312 Ill. App. 3d 1098, 1110 (2000)), and the appellate court has also held that the trial court can decide whether a party has waived its right to arbitrate (Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC, 376 Ill. App. 3d 411, 424 (2007)). Accordingly, if the Illinois Act applied, plaintiffs could also properly seek a stay of arbitration based on waiver and the rule against claim splitting. In other words, under the Illinois Act, it would be the trial court's role to determine if any of the doctrines relied on by plaintiffs applied.

In this case, however, the arbitration provision at issue states that it is subject to the Federal Arbitration Act (Federal Act). See also 9 U.S.C. §2 (2000) (Federal Act applies to any "contract evidencing a transaction involving commerce"). Therefore, we must apply the Federal Act. The Federal Act created substantive federal law that is applicable in both federal and state courts. Southland Corp. v. Keating, 465 U.S. 1, 12, 79 L. Ed. 2d 1, 13, 104 S. Ct. 852, 859 (1984); cf. Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 181 Ill. 2d 373, 382 (1998) (applying federal law to contract governed by the Federal Act). In conducting our analysis, we are cognizant that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 785, 103 S. Ct. 927, 941 (1983).

In supplemental briefing ordered by this court to address the Federal Act, plaintiffs argue that the Federal Act explicitly states that the court, not the arbitrator, has the responsibility to determine the threshold issue of whether a contract to arbitrate exists. See 9 U.S.C. §3 (2000) (upon motion by a party, the trial court shall stay the court action pending arbitration if it is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement"). Plaintiffs note that the United States Supreme Court has also stated that it is the trial court's role to determine what issues the contract requires to be arbitrated. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 131 L. Ed. 2d 985, 993, 115 S. Ct. 1920, 1924 (1995). Plaintiffs further quote this court's statement that " '[w]hether under federal rules or state law, there is no arbitration without a valid contract to arbitrate.' " Bahuriak v. Bill Kay Chrysler Plymouth, Inc., 337 Ill. App. 3d 714, 719

(2003), quoting Aste v. Metropolitan Life Insurance Co., 312 Ill. App. 3d 972, 975 (2000). Plaintiffs argue that because the Cornfields' prior suit with Jaguar Cars was settled and the case was dismissed with prejudice, the RIC and its arbitration provision have been satisfied and cancelled. Plaintiffs argue that the trial court should have therefore concluded that they demonstrated a substantial likelihood of success of showing that there was no contract to arbitrate. Plaintiffs also reassert their arguments regarding res judicata, collateral estoppel, waiver, and the prohibition against claim splitting.

Under the Federal Act, the trial court is charged with determining questions of arbitrability, specifically whether the parties are bound by an arbitration clause and whether the arbitration clause applies to a specific controversy. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 154 L. Ed. 2d 491, 497, 123 S. Ct. 588, 592 (2002). In other words, the arbitrability of a dispute refers to: (1) whether a valid agreement to arbitrate under the contract exists, and if so, (2) whether the dispute sought to be arbitrated is within the arbitration agreement's scope. John Hancock Mutual Life Insurance Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998); National Union Fire Insurance Co. of Pittsburgh, PA v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir. 1996). In determining whether the parties agreed to arbitrate a particular issue, the court should apply state law regarding the formation of contracts. First Options of Chicago, Inc., 514 U.S. at 944, 131 L. Ed. 2d at 993, 115 S. Ct. at 1924.

However, the trial court's role in determining the arbitrability of a dispute does not apply to gateway procedural issues. Procedural questions arising from the dispute and affecting its final disposition are presumptively for the arbitrator, rather than the judge, to decide. That is, the arbitrator presumptively should decide allegations of waiver, delay, or similar defenses to arbitrability. Howsam, 537 U.S. at 84, 154 L. Ed. 2d at 497, 123 S. Ct. at 592. Other examples of gateway

procedural questions are " 'prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.' " (Emphasis omitted.) Howsam, 537 U.S. at 85, 154 L. Ed. 2d at 498, 123 S. Ct. at 592, quoting Revised Unif. Arbitration Act §6, U.L.A. 13, Comment 2 (Supp. 2002). The Howsam Court reasoned that parties would likely have originally expected that the arbitrator would decide such procedural matters. Howsam, 537 U.S. at 84, 154 L. Ed. 2d at 497-98, 123 S. Ct. at 592.

Notwithstanding the distinction between the arbitrability of a dispute and procedural questions, the Federal Act also allows the parties to contractually agree to submit the question of arbitrability itself to arbitration. First Options of Chicago, Inc., 514 U.S. at 943, 131 L. Ed. 2d at 993, 115 S. Ct. at 1923; Bahuriak, 337 Ill. App. 3d at 719. Such an agreement must be clear and unmistakable in order to be enforced. First Options of Chicago, Inc., 514 U.S. at 944, 131 L. Ed. 2d at 993, 115 S. Ct. at 1924. Here, the RIC clearly allowed either party to have "the interpretation, scope, or validity of this clause, or arbitrability of any issue" (emphasis added) decided by arbitration, which is what defendant sought to do. As we later discuss, though, broad provisions such as these are subject to certain exceptions.

We first analyze whether the particular doctrines relied on by plaintiffs are procedural issues for the arbitrator or questions of arbitrability for the trial court before turning to plaintiffs' more general argument that it was the trial court's role to decide whether a valid contract to arbitrate still exists in this case.

### 1. Res Judicata

We begin with res judicata. Res judicata provides that a final judgment rendered on the merits by a court of competent jurisdiction is conclusive as to the rights of the parties involved and their

privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. Nowak v. St. Rita High School, 197 Ill. 2d 381, 389 (2001). Res judicata creates a bar as to every matter that might have been offered to sustain or defeat the claim or demand, in addition to every matter that was originally offered. Nowak, 197 Ill. 2d at 389. For res judicata to apply, there must be: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of causes of action; and (3) identical parties or their privies in both actions. Hudson v. City of Chicago, 228 Ill. 2d 462, 467 (2008).

The answer to the question of whether the court or the arbitrator determines the application of res judicata depends on whether the res judicata objection to the current arbitration proceeding is based on a prior arbitration proceeding or a prior court judgment. The majority of the federal appellate courts hold that where the res judicata objection is based on a prior arbitration proceeding, it is a legal defense that is a part of the dispute on the merits for the arbitrator to resolve. See Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1132 (9th Cir. 2000); National Union Fire Insurance Co., 88 F.3d at 135-36; John Hancock Mutual Life Insurance Co., 151 F.3d at 138. In this manner, res judicata is a gateway procedural question for the arbitrator rather than a question of arbitrability for the court. Indeed, the Howsam Court directly referenced "estoppel" as a procedural question for the arbitrator (Howsam, 537 U.S. at 85, 154 L. Ed. 2d at 498, 123 S. Ct. at 592), and the doctrine of res judicata is also referred to as "estoppel by judgment" (Torcasso v. Standard Outdoor Sales, Inc., 157 Ill. 2d 484, 491 (1993)).

However, where the res judicata objection is based on a prior court judgment from the same jurisdiction, it is a question for the trial court because it invokes the trial court's authority to protect the finality and integrity of its own prior judgments. Chiron Corp., 207 F.3d at 1134; John Hancock

Mutual Life Insurance Co., 151 F.3d at 138; In re Y&A Group Securities Litigation, 38 F.3d 380, 383 (8th Cir. 1994) ("The district court, and not the arbitration panel, is the best interpreter of its own judgment"); Miller Brewing Co. v. Fort Worth Distributing Co., 781 F.2d 494, 499 (5th Cir. 1986). But cf. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1109 (11th Cir. 2004) (not distinguishing between prior arbitration awards and the court's own judgments in stating that Howsam requires the arbitrator to decide the issue of res judicata). The presumption is that the court that issued the original decision has more insight into what was originally considered and decided and thus its preclusive effect. Chiron Corp., 207 F.3d at 1134. This justification does not exist where the original decision was issued by the arbitrator and thus the trial court is not "uniquely qualified to ascertain its scope and preclusive effect." Chiron Corp., 207 F.3d at 1134. The justification is also lacking where the original decision was issued by a foreign jurisdiction. See Zurich American Insurance Co. v. Watts Industries, Inc., 466 F.3d 577, 581 (7th Cir. 2006) (preclusive effect of California state court judgment on arbitration proceeding was a defense and an issue for the arbitrator rather than the federal circuit court). The trial court's authority to protect the integrity of its own judgments will allow it to decide a res judicata issue based on its prior judgments notwithstanding any contractual provision to arbitrate the arbitrability of disputes. See J. Wong, Court or Arbitrator--Who Decides Whether Res Judicata Bars Subsequent Arbitration Under the Federal Arbitration Act?, 46 Santa Clara L. Rev. 49, 73-74 (2005); see also Howsam, 537 U.S. at 84-85, 154 L. Ed. 2d at 498, 123 S. Ct. at 592-93 (emphasizing contracting parties' original expectations regarding who would determine a particular type of dispute and comparative expertise of courts and arbitrators in determining which forum should decide issues).

Accordingly, the general rule is that it is the arbitrator's role to decide the applicability of res judicata, except in situations where a party asserts res judicata based on the trial court's own prior judgment. In the instant case, plaintiffs assert res judicata from the prior case's dismissal with prejudice based on a settlement agreement. Plaintiffs cite various cases for the proposition that a dismissal with prejudice or a consent judgment operates as an adjudication on the merits. See Elliott v. LRSL Enterprises, Inc., 226 Ill. App. 3d 724, 728 (1992); Vanslambrouck v. Marshall Field Co., 98 Ill. App. 3d 485, 487 (1981). But cf. Sterling v. Rockford Mass Transit District, 336 Ill. App. 3d 840, 846 (2003) (what constitutes an adjudication on the merits depends on the context in which the ruling was made). However, we conclude that this situation falls under the general rule requiring the arbitrator to decide the question of res judicata. Although plaintiffs are technically invoking a prior court judgment, that judgment was an agreed order between the Cornfields and Jaguar Cars that dismissed the case pursuant to a settlement agreement; the judgment did not resolve any of the original claims on the merits. We emphasize that the issue currently before us is not whether a dismissal with prejudice or a consent judgment can have a res judicata effect, but rather who is charged with answering that question.

The situation here is similar to a trial court's confirmation of an arbitration award. In Chiron Corp., the defendant argued that the trial court should decide the res judicata issue because it had entered judgment upon the arbitration award, and under section 13 of the Federal Act (9 U.S.C. §13 (2000)), an arbitration judgment is to be treated the same as a court judgment. Chiron Corp., 207 F.3d at 1133. The Chiron court noted that section 13 does not state which forum should determine the judgment's effect, and the court stated that while a confirmed arbitration award has the effect of a court judgment for enforcement purposes, it is not the equivalent of a court judgment for all

purposes. Chiron Corp., 207 F.3d at 1133. The court pointed out that a trial court is required to enter judgment on a confirmed arbitration award without reviewing the award's merits or legal analysis, unlike a judgment issued by the court after full judicial proceedings. Chiron Corp., 207 F.3d at 1133. Further, a typical court judgment is subject to being reopened and/or appealed on the merits, unlike a confirmed arbitration award. Chiron Corp., 207 F.3d at 1133. The court additionally reasoned that even if an arbitration award were treated as a court judgment, it would still be distinguishable from the court's own prior judgment. Chiron Corp., 207 F.3d at 1134. The court stated that "the presumption [is] that the court issuing the original decision is best equipped to determine what was considered and decided in that decision and thus what is or is not precluded by that decision," but such reasoning does not apply "when the district court merely confirmed the decision issued by another entity, the arbitrator, and was not uniquely qualified to ascertain its scope and preclusive effect." Chiron Corp., 207 F.3d at 1134.

Similarly, in the prior case against Jaguar Cars the trial court's entering of an agreed order to dismiss the case was not the equivalent of resolving the claims on the merits after fully litigating the issues. Furthermore, determining whether res judicata applies requires reading and interpreting the settlement agreement, which the trial court did not do in the prior case and therefore was not uniquely qualified to do below. We recognize that In re Y&A Group Securities Litigation also involved a settlement agreement, and there the Eighth Circuit concluded that the trial court should determine the res judicata issue. Y&A Group Securities Litigation, 38 F.3d at 383. However, that case is distinguishable because there the trial court incorporated the parties' settlement agreement into its final judgment, whereas here the trial court merely dismissed the case because the parties had settled their conflict, and there is no indication that the trial court even read, much less considered, the

settlement agreement. Thus, under the circumstances present here, it is the arbitrator's role to determine the res judicata effect of the settlement agreement, meaning that plaintiffs failed to demonstrate a substantial likelihood of success on the merits of their declaratory judgment action based on the trial court applying res judicata.

### 2. Claim Splitting

Next, we look at whose role it is to determine the potential application of the prohibition against claim splitting. Plaintiffs maintain that they raised at least a fair question regarding their success on their claim-splitting claim. Plaintiffs argue that defendant's arbitration demand was a purposeful split of her claim derived to obtain multiple recoveries from the same set of operative issues litigated, when she had already obtained complete relief on her entire cause of action in her case against Jaguar Cars.

Plaintiffs appear to be arguing that the rule against claim splitting is an independent basis to prevent defendant's arbitration demand, but claim splitting is simply an aspect of res judicata. Horwitz v. Alloy Automotive Co., 992 F.2d 100, 103 (7th Cir. 1993). The "principle that res judicata prohibits a party from seeking relief on the basis of issues that could have been resolved in a previous action serves to prevent parties from splitting their claims into multiple actions." Hudson, 228 Ill. 2d at 471-72; see also Dubina v. Mesirow Realty Development, Inc., 178 Ill. 2d 496, 507 (1997) (a "plaintiff seeking to split his claims and appeal in a piecemeal manner may be barred by res judicata"); Saxon Mortgage, Inc., 312 Ill. App. 3d at 1109 ("The doctrine of res judicata also prohibits a party from subsequently seeking relief by splitting a single cause of action into more than one proceeding"). As we have concluded that plaintiffs have not shown a substantial likelihood of showing that the trial

court could apply res judicata, because such a question must be answered by the arbitrator, it follows that plaintiffs' request for a preliminary injunction based on claim splitting also fails.

### 3. Collateral Estoppel

We now move on to collateral estoppel. Collateral estoppel is an equitable doctrine that prevents a party from relitigating an issue that was already decided in a prior proceeding. Preferred Personnel Services, Inc. v. Meltzer, Purtill & Stelle, LLC, 387 Ill. App. 3d 933, 944 (2009). Collateral estoppel applies where: (1) the issue decided in the prior adjudication is identical to the one presented in the current suit; (2) a final judgment on the merits was entered in the prior adjudication; and (3) the party against whom estoppel is asserted was a party to or was in privity with a party to the prior adjudication. Preferred Personnel Services, Inc., 387 Ill. App. 3d at 944.

Like res judicata in general, collateral estoppel is considered a legal defense that is related to the merits of the case and is therefore arbitrable. See United States Fire Insurance Co. v. National Gypsum Co., 101 F.3d 813, 817 (2d Cir. 1996); Local Union No. 370 v. Morrison-Knudsen Co., 786 F.2d 1356, 1358 (9th Cir. 1986). Again, the Howsam Court directly referenced "estoppel" as a procedural question for the arbitrator (Howsam, 537 U.S. at 85, 154 L. Ed. 2d at 498, 123 S. Ct. at 592), and collateral estoppel is, of course, a form of estoppel. To any extent that collateral estoppel could be considered a question of arbitrability for the court, here the parties contractually agreed that a party could elect to have the "arbitrability of any issue" determined by the arbitrator. Furthermore, the policy implications allowing the trial court to decide an issue of res judicata arising from a prior court judgment are not present for an issue of collateral estoppel, because collateral estoppel usually affects just issues related to the claim rather than the ruling on the entire claim itself. See Miller v. Runyon, 77 F.3d 189, 194 (7th Cir. 1996) (in asserting collateral estoppel, a party is "seeking ***

not to bar but merely to constrain the arbitrator"). Even if such policy concerns would apply equally to res judicata and collateral estoppel, as we previously discussed, such concerns are not implicated under the facts of this case.

### 4. Waiver

We next look at the potential application of waiver. Howsam admittedly refers to "waiver" as a procedural issue for the arbitrator to decide. Howsam, 537 U.S. at 84, 154 L. Ed. 2d at 497, 123 S. Ct. at 592. However, the majority of federal appellate courts that have considered this issue have concluded that the Howsam Court's use of the term "waiver" referred to a party's lack of compliance with contractual conditions precedent to arbitration, rather than waiver based on prior litigation or conduct inconsistent with the right to arbitrate, which has traditionally been ruled upon by the court. JPD, Inc. v. Chronimed Holdings, Inc., 539 F.3d 388, 393-94 (6th Cir. 2008); Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 217-19 (3d Cir. 2007); Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 14 (1st Cir. 2005). We agree with the reasoning of these courts. Admittedly, this case has the added circumstance that the arbitration provision allows for a party to choose to arbitrate the issue of arbitrability. However, like the question of the res judicata effect of prior court judgments, we believe that this type of "catch-all" provision does not include the question of the effect of a party's prior litigation, which the trial court is better qualified to determine than the arbitrator. Accordingly, we agree with plaintiffs that the trial court here could properly consider the waiver issue.

Plaintiffs argue that by choosing to litigate her claim by initiating an action in which the purchase contract and financing were directly at issue and, after two years, settling those claims and dismissing the matter with prejudice, defendant waived her right to elect arbitration for those same claims. A contractual right to compel arbitration may be waived like other contractual rights.

La Hood v. Central Illinois Construction, Inc., 335 Ill. App. 3d 363, 364 (2002). "Waiver of the right to arbitration occurs when a party's conduct is so inconsistent with the arbitration clause as to demonstrate abandonment of that right or when the party submits arbitrable issues to the court for decision." Bahuriak, 337 Ill. App. 3d at 721.

In this case, the arbitration provision was in the RIC. That contract was signed by Jaguar of Tinley Park and defendant, and it stated that it would be assigned to Ford Credit; the contract did not apply to Jaguar Cars. The arbitration provision was also elective and stated that a party could choose to arbitrate at any time, even after the filing of a lawsuit. Thus, the Cornfields' action against Jaguar Cars was not inconsistent with the arbitration clause and did not indicate defendant's intent to abandon her arbitration rights against plaintiffs. Arbitration agreements will be enforced even if there are claims by third parties or pending multiparty litigation (Atkins v. Rustic Woods Partners, 171 Ill. App. 3d 373, 380 (1988)) because the public policy favoring arbitration outweighs concerns about judicial economy, duplication of effort, or inconsistent results (La Hood, 335 Ill. App. 3d at 365). Thus, plaintiffs were not entitled to a preliminary injunction on the ground of waiver, because they did not show a substantial likelihood that they could succeed in obtaining a declaratory judgment on this basis.

### 5. Continuing Existence of Contract to Arbitrate

Somewhat related to the waiver issue is plaintiffs' assertion that there is no longer a contract to arbitrate between the parties. Specifically, in describing the effect of the Cornfields' prior litigation and settlement with Jaguar Cars, plaintiffs say that the RIC has been "satisfied and cancelled," that the arbitration provision is "ineffective and cancelled," and that the contract and the provision are "expir[ed]/terminat[ed]" and "resci[nded] and revo[ked]."

Plaintiffs cite Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc., 307 F.3d 601 (7th Cir. 2002) (Nissan I), and Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc., 486 F.3d 989 (7th Cir. 2007) (Nissan II). In Nissan I, the district court compelled arbitration even though the dispute arose after the parties' agreement to arbitrate, as amended, had already expired by its own terms. Nissan I, 307 F.3d at 604. The Seventh Circuit vacated the district court's decision and remanded the case, holding that the plaintiff had failed to present sufficient evidence that the defendant had waived the expiration date or that the arbitration provision was otherwise enforceable. Nissan I, 307 F.3d at 604-05. The district court subsequently ruled that the plaintiff failed to demonstrate that it was entitled to arbitration. Nissan II, 486 F.3d at 990. The Seventh Circuit affirmed, holding that the plaintiff failed to provide sufficient evidence of: a written agreement to arbitrate that survived the expiration of the prior agreement, as amended; estoppel based on the defendant's alleged waiver of the expiration date; or the existence of an implied contract to extend the expiration date. Nissan II, 486 F.3d at 995-96.

We conclude that whether the RIC survives defendant's settlement is a question for the arbitrator. Unlike in Nissan I and Nissan II, there is no provision in the RIC that it expires or otherwise terminates on a certain date or upon the happening of a specific event. Also, although plaintiffs assert that defendant "sought and later obtained rescission and revocation of the contracts as a result of Defendant's affirmative conduct that brought about the Underlying Action," plaintiffs contradictorily state that "cancellation and revocation of the Purchase Contract and the RIC *** could not be obtained from Jaguar Cars," the party in the underlying action. Furthermore, we reiterate and emphasize that even though the question of whether the parties are bound by contract to arbitrate is typically a question of arbitrability for the trial court (see Howsam, 537 U.S. at 84, 154

L. Ed. 2d at 498, 123 S. Ct. at 592), the parties may contractually agree to submit the question of arbitrability itself to arbitration (First Options of Chicago, Inc., 514 U.S. at 943, 131 L. Ed. 2d at 993, 115 S. Ct. at 1923; Bahuriak, 337 Ill. App. 3d at 719). Defendant elected to proceed under such a clause in the RIC, which further distinguishes this case from Nissan I and Nissan II. We therefore conclude that plaintiffs have failed to show a substantial likelihood of succeeding on the merits in the trial court based on the argument that the RIC has been satisfied, cancelled, expired, terminated, rescinded, and/or revoked, because such an issue is for the arbitrator to decide.

Finally, we note that although plaintiffs have appealed the trial court's grant of defendant's motion to stay the proceedings and compel arbitration in addition to its denial of their request for a preliminary injunction, they offer no distinct argument pertaining to the trial court's grant of defendant motion. Therefore, we do not address that issue separately.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Du Page County circuit court.

Affirmed.

McLAREN and O'MALLEY, JJ., concur.