# Illinois Official Reports

## Appellate Court

> ### *Somer v. Bloom Township Democratic Organization*, 2020 IL App (1st) 201182

Appellate Court
Caption

THOMAS J. SOMER, in His Official Capacity as Bloom Township Supervisor; CARLA MATTHEWS, in Her Official Capacity as Bloom Township Trustee; MIKE L. NOONAN, in His Official Capacity as Bloom Township Trustee; JOSEPH PATRICK STANFA, in His Official Capacity as Bloom Township Highway Commissioner; DERRICK BURGESS, in His Official Capacity as Mayor of the Village of Sauk Village; ANNIE R. COULTER, in Her Official Capacity as Mayor of the Village of Ford Heights; DAVID A. GONZALEZ, in His Official Capacity as Mayor of the City of Chicago Heights; RICHARD HOFELD, in His Official Capacity as Mayor of the Village of Homewood; TERRY L. MATTHEWS, in His Official Capacity as Mayor of the Village of South Chicago Heights; KENNETH PETERSON, in His Official Capacity as Mayor of the Village of Steger; CHRISTOPHER BAIKAUSKAS, in His Capacity as Alderman of the City of Chicago Heights; and KIM M. ABEL, RICHARD J. AMADIO, LUPITA ARELLANO, KATHERINE AURELIO, LORI L. AURELIO-WHITE, MICHELE R. BAIKAUSKAS, SYLVIA BALTAZAR, JOYCE BLACK, LOUISE BOSTA, CHARLES CIAPHRS, DEBORAH K. CLADIS, HENRY DIAL, ALLIYAH DRAKE, CURTIS DRAKE, SHIRLEY DRAKE, JANET M. FIORENZO, TERENCE J. FIORENZO, MONIQUE GREEN, BETTY HARR, VICTORIA HAYSLETT, PAIGE HOGEVEEN, EDDIE JONES, SHARRONNE JONES, EDWARD J. KAMINSKI, BILL KELLY, BRIAN KERASEK, BERNARD LEWIS, FRANK LEWIS, FRANKIE W. LEWIS, INEISHA C. LEWIS, LAKEYSHA LEWIS, KEITH L. LOH, DAVID L. LONG, ARACELI MARRUFO, RONALD R. MASCITTI, STEVEN W. MATTHEWS, CHRISTINE PANICI, LUCIANO PANICI JR., PAUL PAPPALARDO, KEITH PARISE, JOSEPH POPE, NORMA SANCHEZ, JOYCE SEALEY-HUFF, TIMOTHY M. SEESE, JUDI SOMER, JOHN N. STANFA, ERIC STANTON, LISA STANTON, CURTIS STRACZEK, TRACY SYLVESTAR, TRAVIS TAYLOR, PETROS VISVARDIS, and DANNY L. WHITE JR., as Citizens of Bloom Township, Plaintiffs-Appellants, v. THE BLOOM TOWNSHIP DEMOCRATIC ORGANIZATION; THE BLOOM TOWNSHIP DEMOCRATIC CENTRAL COMMITTEE; LORI J.

WILCOX, in Her Official Capacity as Committeeperson for the Bloom Township Democratic Organization Central Committee; THE CLERK OF BLOOM TOWNSHIP, in Her Official Capacity; and KAREN A. YARBOROUGH, in Her Official Capacity as Clerk of Cook County, Defendants (The Bloom Township Democratic Organization; the Bloom Township Democratic Central Committee; and Lori J. Wilcox, in Her Official Capacity as Committeeperson for the Bloom Township Democratic Organization Central Committee, Defendants-Appellees).

| | |
|---|---|
| District & No. | First District, Fourth Division<br>No. 1-20-1182 |
| Filed | November 10, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2020-COMS-000032; the Hon. Patrick T. Stanton, Judge, presiding. |
| Judgment | Affirmed with directions. |
| Counsel on Appeal | Michael T. Del Galdo, Cynthia S. Grandfield, Tiffany Nelson-Jaworski, and Michael A. Albert, of Del Galdo Law Group, LLC, of Berwyn, for appellants.<br><br>Ed Mullen, of Chicago, for appellees. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Hall and Ellis concurred in the judgment and opinion. |

**OPINION**

¶ 1      Bloom Township (Township) has several local elected offices that will be voted on in their next general election, which will be held on April 6, 2021. Normally, the nominees for each political party for their elected positions are selected through a caucus process, which would occur on December 1, 2020. However, this is anything but a normal year, and the presence of a global health pandemic has changed the landscape of many otherwise "normal" activities. Accordingly, plaintiffs, various elected officials and citizens of the Township, have filed a lawsuit seeking an order requiring the Democratic nominees to be selected through a primary instead of through the Township caucus process. Plaintiffs also filed a motion for a preliminary injunction and temporary restraining order, seeking the same relief. After a hearing, the trial court denied plaintiffs' request for a preliminary injunction, finding that plaintiffs had failed to establish a likelihood of success on the merits. Plaintiffs appeal, and for the reasons that follow, we affirm, with instructions.

¶ 2                        BACKGROUND[1]

¶ 3      Bloom Township is an Illinois township, as defined by the Township Code (60 ILCS 1/1-1 *et seq.* (West 2018)), with an estimated population of 89,214 residents, 56,182 of whom were registered voters in the 2018 election. Under the Township Code, certain township offices are elected "at the time of the regular township election provided in the general election law" and hold office for four years. 60 ILCS 1/50-10(a) (West 2018). For 2021, the date of that election is April 6, 2021. See 10 ILCS 5/2A-1.1 (West 2018) (setting forth election schedule).

¶ 4      Under the Township Code, on the first Tuesday in December preceding the date of the regular township election—here, December 1, 2020—"a caucus shall be held by the voters of each established political party in a township to nominate its candidates for the various offices to be filled at the election." 60 ILCS 1/45-10(a) (West 2018). The party's township central committee is responsible for promulgating rules of procedure for the caucus (60 ILCS 1/45-15 (West 2018)), which must be approved, and may be amended, by the participants attending the caucus (60 ILCS 1/45-50(a) (West 2018)). However, a political party's township central committee "may, with respect to any regular township election, determine that its candidates for township offices shall be nominated by [a] primary [election] in accordance with the general election law," rather than through a caucus process. 60 ILCS 1/45-55 (West 2018). Under the Township Code, "[i]f the township central committee makes that determination, it must file a statement of the determination with the county clerk no later than November 15 preceding the township election." 60 ILCS 1/45-55 (West 2018).

¶ 5      In the case at bar, the Township's Democratic central committee allegedly intends to select its candidates through a caucus process, to be held on December 1, 2020. While this would normally be uncontroversial, the global pandemic caused by the novel coronavirus (COVID-19) has altered the landscape in which the caucus is to occur. On March 9, 2020, Governor Pritzker declared all counties in the state of Illinois as a disaster area and, on March 13, 2020, issued an executive order imposing restrictions as a result of the pandemic. The governor subsequently issued a number of disaster declarations throughout the spring, summer, and fall

---

[1]All facts are taken from plaintiffs' complaint and its exhibits, as well as from the briefing on the motion for a preliminary injunction.

and periodically issued executive orders modifying the restrictions, depending on the state's level of success in battling the pandemic. At their maximum, the restrictions included, *inter alia*, a "stay at home" order, the temporary closing of all nonessential businesses, the temporary closing of schools, the mandatory wearing of face coverings, and the limitation of public or private gatherings to no more than 10 people. At the time that the complaint at issue in the instant appeal was filed, gatherings were limited to no more than 50 people or 50% of room capacity, whichever is less, and at the time of the filing of this opinion, the pandemic has increased at an alarming rate.[2]

¶ 6        On October 9, 2020, plaintiffs filed a complaint in the circuit court of Cook County, seeking an order prohibiting the Township's Democratic candidates from being selected through a caucus and requiring the selection of candidates through a primary election. Plaintiffs allege that the COVID-19 pandemic makes a caucus unsafe and would require the Township's citizens to choose between risking their health and forfeiting their right to vote. Plaintiffs further allege that the number of participants at caucuses has historically been approximately 200 electors and estimated that the December 1, 2020, caucus was expected to have as many as 300 to 400 electors. Plaintiffs allege that holding such a caucus would "almost certainly" violate the governor's executive orders limiting the size of gatherings and mandating social distancing. Plaintiffs' complaint sets forth five counts: (1) declaratory judgment, (2) injunctive relief, (3) violations of the Election Code, (4) *mandamus*, and (5) a writ of prohibition.

¶ 7        On the same day, plaintiffs filed an emergency motion for a temporary restraining order and for a preliminary injunction. Plaintiffs requested an order that the Township be prohibited from holding a caucus meeting on December 1, 2020, and that all Township candidates should be elected via a consolidated primary election in February 2021.

¶ 8        In response to the motion for a preliminary injunction, defendants claimed that the motion should be denied because the caucus meeting could be held in compliance with public health guidelines and would not unduly burden any rights of plaintiffs. Defendants further claimed that Democratic committeeperson Lori Wilcox had not made any public announcement as to whether there would be a caucus meeting or a primary election and was not required to make such a decision until November 11, 2020, when she was required to notify the county clerk under the Township Code.

¶ 9        The parties came before the trial court for a hearing on plaintiffs' injunction motion on October 21, 2020. At the hearing, the parties focused on whether plaintiffs had a likelihood of success on the merits, as well as the balance of the equities. As in their response to the injunction motion, defendants claimed that they had no intention of violating any of the public health guidelines in place at the time of any caucus meeting, and counsel suggested various ways in which the caucus could be held in compliance with the guidelines, such as permitting remote attendance via Zoom or similar technology. The trial court questioned counsel about what would happen if restrictions further tightened so as to make it impossible to hold a caucus meeting, and counsel responded that, if there was no caucus meeting and the time period had passed for selecting a primary, then any candidates would need to run as independent candidates and not as candidates of the Democratic party. Counsel further explained that it was fairly common for candidates to run as independent candidates or as candidates of new political

---

[2]At the time of this appeal, gatherings are limited to 25 people or 25% of overall room capacity, whichever is less.

parties in Township and other local governmental races in Cook County. In response, plaintiffs' counsel claimed that there was no practical way to permit remote participation or to comply with the public health guidelines and that it would be much simpler to switch to a primary election.

¶ 10 On October 27, 2020, the parties came before the trial court for a ruling on plaintiffs' motion. Before the court issued its ruling, it noted that the governor had imposed additional restrictions since the time of the hearing, lowering the number of attendees at any in-person gathering to 25, and asked if defendants continued to assert that they would comply with the public health guidelines if a caucus was held. Defendants' counsel responded that they would, "absolutely." Counsel further stated that "[w]e are trying to figure a way to do this predominantly remotely, if not entirely remotely."

¶ 11 The court then turned to plaintiffs' motion, noting that it had asked the parties to attempt to resolve the issue themselves but that such efforts had proven fruitless. The court found that, under the Township Code, caucuses were the preferred method for political parties to choose their nominees for the general election, unless the committee instead decided to proceed through a primary election. The court further found that the Township contained several municipalities that would not have primary elections at all unless the committee chose to select its candidates in that way, meaning that no poll workers, election judges, or voters would be required to go to polling places within those municipalities. The court also found that the parties agreed that, if the committee did not provide the requisite notice, then the Democratic party would have no nominees in the general election, meaning that the candidates would be required to run in the general election as independent candidates or as nominees of new political parties. The parties further agreed that the committee could affirmatively choose "to make this a nonelection," meaning that the committee could decide that the Democratic party would sponsor no candidates. Finally, the court found that defendants had provided evidence that there had been many contested elections in the Township in which candidates ran as an independent or sponsored by the Green party or other local political party.

¶ 12 The court noted that the parties did not dispute that plaintiffs had established that they had protectable rights, including the right of assembly, and that they would suffer irreparable harm if those rights were violated. Instead, the focus was on whether plaintiffs had shown that there was a likelihood of success on the merits, with defendants claiming that plaintiffs had failed to establish that a caucus meeting could not be held without violating the governor's health and safety guidelines. The court found:

> "At this point, the court finds that plaintiffs have not met their burden. Specifically, other than generally stating that the caucuses have been traditionally held indoors in person with more than 50 people, now more than 25, plaintiffs have not established a fair question that Wilcox and the committee cannot propose and enact rules that would allow for conduct of the caucus that complies with the Governor's Covid-19 limitations. Wilcox now has two weeks to decide whether or not to have a caucus that complies with the governor's rules. Thereafter, if she decides that no caucus can be held, she can decide whether or not to have a primary. In making decisions, she will need to weigh the risk that she will not be able to hold a caucus. In other words, if she chooses to have a caucus, sends notice, but determines she can't do one safely, or whether it is in the best interests of the party to have a primary, I don't believe this court, through an injunction, can or should make that decision for her."

¶ 13	The court specifically emphasized:

"In making this determination, the court accepts Wilcox's assertion that she will not hold a caucus that violates Covid-19 attendance restrictions. The court also considers plaintiff's statement that their electoral rights will be sufficiently protected if no primary or caucus is held and that there is an open general election. The court is also mindful that these facts are quickly changing and that the governor may, in fact, enact rules applicable to the safe conduct of caucuses, as he did with the presidential election.

For now, the court will leave it to state and local elected policymakers to best determine how and if caucuses can proceed."

¶ 14	Ultimately, the court found:

"This is a difficult decision; but ultimately, I think it's premature in many respects for me to say that a caucus can't be held safely. And if she elects to try to have a caucus and fails, the result will be an open election, which I think all parties agree, that sufficiently protects the rights of the voters. And given the discretion she has to choose between a primary, a caucus or not having any nominees, I don't see how I can order her to exercise that discretion to hold a primary."

Accordingly, the trial court denied plaintiffs' request for a preliminary injunction.

¶ 15	ANALYSIS

¶ 16	On appeal, plaintiffs contend that the trial court should have granted their motion for a preliminary injunction in order to prevent the caucus meeting. Plaintiffs, as the parties seeking the preliminary injunction, were required to demonstrate (1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). A decision to grant or deny a preliminary injunction is generally reviewed for an abuse of discretion. *Mohanty*, 225 Ill. 2d at 62-63. An abuse of discretion occurs only when the ruling " 'is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the court's view.' " *World Painting Co. v. Costigan*, 2012 IL App (4th) 110869, ¶ 12 (quoting *Clinton Landfill, Inc. v. Mahomet Valley Water Authority*, 406 Ill. App. 3d 374, 378 (2010)). However, where the determination rests on a question of law, it is reviewed *de novo*. *Mohanty*, 225 Ill. 2d at 63. *De novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62.

¶ 17	In the case at bar, plaintiffs argue that a *de novo* standard of review should apply, because they claim that the trial court's decision was based on its interpretation of the Township Code. However, the trial court's ruling makes it clear that it was also heavily persuaded by defendants' representations that they would be able to safely conduct a caucus meeting. Accordingly, where the trial court's determinations of law are at issue, we review them *de novo* but otherwise review the court's denial of the preliminary injunction for an abuse of discretion.

¶ 18	In the case at bar, only the final element—a likelihood of success on the merits—is in dispute, and we cannot find that the trial court erred in finding that plaintiffs had failed to establish a likelihood of success on the merits. First, plaintiffs have not provided any authority suggesting that they have the ability to dictate the method by which a township's political party selects its nominees. Under the Illinois Constitution, townships are a limited form of

government that "shall have only powers granted by law." Ill. Const. 1970, art. VII, § 8. Additionally, under the constitution, "[t]he General Assembly shall provide by law for the selection of officers of the foregoing units [of local government]." Ill. Const. 1970, art. VII, § 8. Here, the General Assembly has done so through the provisions of the Township Code.

¶ 19 As set forth above, the legislature has made the determination that "a caucus shall be held by the voters of each established political party in a township to nominate its candidates for the various offices to be filled at the election." 60 ILCS 1/45-10(a) (West 2018). However, "the township central committee of a political party composed of the elected township committeeman and his or her appointed precinct committeemen *** may, with respect to any regular township election, determine that its candidates for township offices shall be nominated by primary in accordance with the general election law," rather than through a caucus. 60 ILCS 1/45-55 (West 2018). Under the Township Code, "[i]f the township central committee makes that determination, it must file a statement of the determination with the county clerk no later than November 15 preceding the township election." 60 ILCS 1/45-55 (West 2018). The express language of the Township Code places this decision in the hands of the township central committee, not in anyone else. Plaintiffs cannot change this allocation of responsibility. See, *e.g.*, *Baldacchino v. Thompson*, 289 Ill. App. 3d 104, 113 (1997) (where the electors are given a power under the Township Code, it is the electors, not the township's board of trustees, who must exercise that power); 2000 Ill. Att'y Gen. Op. No. 00-009, at 2, https://illinois attorneygeneral.gov/opinions/2000/00-009.pdf [https://perma.cc/W7KC-M97M] (where the legislature has provided for the manner of selection of township officers, a township cannot change the manner of selection by providing for the nomination and selection of township officers on a nonpartisan basis).

¶ 20 Additionally, even if plaintiffs had the power to dictate the committee's decision, we agree with the trial court that plaintiffs have not demonstrated that holding a caucus meeting will violate plaintiffs' rights. To show a likelihood of success on the merits, a party does not have to meet the same burden of proof that is required at the final hearing. *Ford Motor Credit Co. v. Cornfield*, 395 Ill. App. 3d 896, 903 (2009). Instead, "a plaintiff need only raise a fair question as to the existence of the right which [it] claims and lead the court to believe that [it] will probably be entitled to the relief requested if the proof sustains [its] allegations." (Internal quotation marks omitted.) *Ford Motor Credit Co.*, 395 Ill. App. 3d at 903. However, a preliminary injunction "is an extraordinary remedy, and the complaint must show clearly that the relief sought is warranted. Allegations supporting the claim must be positive, certain, and precise. Mere opinion, conclusion, or belief will not suffice." *McErlean v. Harvey Area Community Organization*, 9 Ill. App. 3d 527, 529 (1972).

¶ 21 In the case at bar, plaintiffs' complaint is based on opinion and speculation, both as to the state of the pandemic at the time of the caucus and as to defendants' response to it. Defendants have clearly expressed multiple times that they have no intention of holding a caucus meeting that does not comply with the public health guidelines in effect at the time, whatever they may be. However, plaintiffs nevertheless insist that there is no way that the caucus meeting can be held safely. Plaintiffs, however, have provided no support for this blanket statement. Instead, plaintiffs continually characterize the caucus meeting as "forcing hundreds of people to congregate" in defiance of the governor's orders, despite the fact that this is clearly not an option that defendants contemplate. We are cognizant of the fact that the ultimate rules of procedure to be followed at the caucus meeting are voted on by the participants in the caucus

meeting itself and cannot be definitely known in advance. See 60 ILCS 1/45-50(a) (West 2018). However, the rules are initially proposed by the committee, which has represented that it intends to comply with all public safety guidelines. Consequently, we cannot find that the trial court abused its discretion in finding that plaintiffs' general protestations are insufficient to show a likelihood of success on the merits.

¶ 22    We recognize, however, that plaintiffs' rights, including their right to assemble, are implicated by defendants' decision as to how to proceed. The first amendment to the United States Constitution provides that Congress "shall make no law *** abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend. I. The fourteenth amendment makes that prohibition applicable to the states. *Meyer v. Grant*, 486 U.S. 414, 420 (1988); U.S. Const., amend. XIV. The United States Supreme Court "ha[s] held that the First Amendment, among other things, protects the right of citizens 'to band together in promoting among the electorate candidates who espouse their political views.' " *Clingman v. Beaver*, 544 U.S. 581, 586 (2005) (quoting *California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000)). Regulations burdening those rights must be carefully drafted, depending on the severity of the burden. See *Clingman*, 544 U.S. at 586-87 ("Regulations that impose severe burdens on associational rights must be narrowly tailored to serve a compelling state interest. [Citation.] However, when regulations impose lesser burdens, a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. [Citation.]" (Internal quotation marks omitted.)).

¶ 23    In the case at bar, while defendants represent that they will comply with all public health guidelines, should they ultimately choose not to, plaintiffs would be in a position where they would be required to choose between their rights and their safety. While we do not anticipate that defendants will flout the restrictions, we certainly understand plaintiffs' fears and reluctance to rely on such representations, without more. Consequently, while we affirm the trial court's denial of plaintiffs' motion for a preliminary injunction, if defendants choose to proceed with a caucus meeting, we order the trial court to ensure the safety of the participants by imposing appropriate restrictions, based on the public health guidelines in effect at the time. Specifically, the trial court's order should include a requirement that defendants provide for a method of remote participation in the caucus meeting for those people who do not desire to be in attendance at a live caucus meeting. Those people who do desire to meet at an open meeting will have the opportunity to do so, subject to the public health guidelines in effect at the time. By providing both an open meeting and one through remote participation, the right to assemble will be satisfied. The remote participation can occur through Zoom or through similar technology. The court's order must also require that defendants also ensure that any person who would otherwise be entitled to participate in the caucus meeting has the ability to participate remotely, meaning that defendants must provide for a way for those without home computers or sufficient Internet connections to nonetheless be able to participate and have their vote counted.

¶ 24                                          CONCLUSION

¶ 25    For the reasons set forth above, we affirm the trial court's denial of plaintiffs' motion for a preliminary injunction, as plaintiffs have failed to establish a likelihood of success on the merits. However, we order the trial court to ensure the safety of the participants by imposing

appropriate restrictions, including requiring defendants to provide for a method of remote participation for those who do not desire to be at a live caucus meeting, should they choose to proceed with a caucus meeting, as set forth in more detail above.

¶ 26        Affirmed with directions.